CHICAGO—FIRST DISTRICT—MAY, 1926.     35

Severinghaus Prtg. Co. v. Thompson, 241 Ill. App. 35.

## Severinghaus Printing Company, Appellant, v. William Hale Thompson, Appellee.

## Gen. No. 30,411.

1. DIRECTING VERDICT AND DEMURRERS TO EVIDENCE—*propriety of direction for defendant.* A motion to direct a verdict for defendant should be denied and the cause submitted to the jury if there is in the record any evidence from which, if it stood alone, the jury could find, without acting unreasonably in the eye of the law, that all the material averments of the declaration have been proved.

2. DIRECTING VERDICT AND DEMURRERS TO EVIDENCE—*consideration of evidence on motion to direct verdict for defendant.* On consideration of a motion to direct a verdict for defendant the court may not weigh the evidence, but must have regard only to the evidence most favorable to the plaintiff bearing upon the issues made by the pleadings.

3. ASSUMPSIT—*sufficiency of evidence to support directed verdict for defendant.* Evidence in an action of assumpsit for services rendered and material furnished, examined in the light most favorable to the plaintiff, held to warrant the implication of a contract on the part of the defendant to pay to plaintiff the reasonable value of such services and material, rendering erroneous the direction of a verdict for defendant.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Reversed and remanded. Opinion filed May 25, 1926.

SALMON O. LEVINSON, WILLIAM E. CLOYES and CHESTER E. CLEVELAND, for appellant.

SCHUYLER, ETTELSON & WEINFELD, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.
This is an appeal from a judgment rendered after a directed verdict in favor of the defendant at the close of the plaintiff's evidence. The only question presented is whether the court erred in directing the verdict.

The suit is in assumpsit, and was first brought against the defendant and 18 other persons, for $150,-000. The original declaration and copy of account sued on were amended, and upon the trial the suit was dismissed as to all the defendants except William Hale Thompson, and a new amended declaration and copy of account sued on were then filed to conform to the proofs that had been taken. This last amended declaration consists of two special counts and the common counts. The first count alleges, in substance, that plaintiff is an Illinois corporation engaged in the printing business; that defendant, in the years 1920 to 1923, inclusive, "was engaged in conducting and carrying on political campaigns and other political activities, in doing which he required and used large quantities of campaign literature, handbills, posters, advertisements and the like," which plaintiff furnished at defendant's special instance and request and for which defendant promised to pay what the paper and printing and necessary service incident thereto were reasonably worth, which is alleged to be $225,000. The second count contains the same allegations except that it is alleged that defendant agreed to pay certain specified prices for the work done, aggregating the same amount. It was agreed that the pleas theretofore filed should stand to the last amended declaration. Such pleas, so far as applicable, were the general issue and special pleas alleging, in substance, that any campaign literature, handbills, posters and the like which may have been furnished by plaintiff, were not furnished to the defendant, Thompson, but were furnished to the William Hale Thompson Republican Club, an Illinois corporation, which corporation, during the years mentioned, assisted the Republican County Central Committee in conducting political campaigns.

Upon a motion to direct a verdict, the rule is that if there is in the record any evidence from which, if it stood alone, the jury could, without acting unrea-

Severinghaus Prtg. Co. v. Thompson, 241 Ill. App. 35.

sonably in the eye of the law, find that all the material averments of the declaration have been proved, then the motion should be denied and the cause should be submitted to the jury. *Libby, McNeil & Libby v. Cook,* 222 Ill. 206. "In passing upon a motion for a peremptory instruction, the question of the preponderance of the evidence does not arise at all." (Id. 212.)

The evidence tends to prove that during the years mentioned plaintiff furnished a large quantity of printing, paper, cards, letters and other campaign literature, with the incidental service connected therewith, to defendant and others who were members of a voluntary association, called by the witnesses the "William Hale Thompson Republican Organization," or the "William Hale Thompson Organization," of which defendant was the recognized head; that such association was formed before he became mayor of Chicago to advance his political fortunes, and after his election, it continued to actively advocate and support the election of ward committeemen who were members of his organization, and of such candidates for public office as were favored by him; that the "copy" for all such campaign literature was prepared by a publicity committee, the active members of which consisted of five persons, one of whom testified that he was appointed by the defendant, and all of whom were active members of his association or organization; that defendant often participated with the publicity committee in the preparation of such copy, and none of it was sent to the plaintiff to be printed unless and until it had been submitted to and approved by defendant; that during most of the campaign following January 1, 1920, the committee did its work in a room in a hotel in Chicago, which was frequently visited by defendant as well as by others who were active in his organization; that after the copy had been examined and approved by defendant, it was either delivered to the plaintiff by the committee or some member thereof, or

by other persons to whom it was delivered by the committee; that in all cases, it was copy which was prepared by such committee and submitted to and approved by defendant; that one of the last items in plaintiff's account is for one million "pledge cards" for defendant personally, which were apparently printed in anticipation of a campaign by defendant as a candidate for a third term as mayor; that bills for the work done and materials furnished, at cost prices plus a small "overhead," were rendered from time to time, which were checked over and approved by the same persons who sent the copy to the plaintiff, and payments thereon were made from time to time from a fund which was collected in various ways, mostly by voluntary contributions of different members of defendant's organization, and that after defendant ceased to be mayor of Chicago, his organization, and the committee which had furnished plaintiff with the copy for the printing in question, ceased to function, leaving unpaid printing bills aggregating over $140,000, not including interest.

Defendant's counsel say that the evidence shows that the association referred to as the "William Hale Thompson Organization" was "none other than the regular Republican organization of Cook County, which under the law was made up of the Ward Committeemen of the thirty-five wards," who "were also members of the William Hale Thompson Republican Club, which acted as an auxiliary or aid to the Republican County Central Committee," which, they say, carried on all campaigns of the Republican party, and from this it is argued that either the Republican County Central Committee, or the incorporated William Hale Thompson Republican Club, may be liable to plaintiff, but not the defendant. There is some evidence from which, if it stood alone, such a conclusion might be drawn, but there is also much evidence to the

contrary, and upon the motion to direct a verdict the court could not weigh this evidence, but could only consider the evidence favorable to the plaintiff, bearing upon the issues made by the last amended declaration and the pleas thereto.

The theory of the plaintiff's cause of action is based upon the principle that if a member of a voluntary association, the objects of which do not contemplate profit or loss in a business sense, expressly or impliedly authorizes a transaction in which an indebtedness is incurred by or on behalf of such association, or if he assents to or ratifies the contract on which such a liability is predicated, he is liable as a principal for the indebtedness.    This proposition is well supported by authority.    *Vader v. Ballou,* 151 Wis. 577; *Robbins Co. v. Cook,* 42 S. D. 136; *Willcox v. Arnold,* 162 Mass. 577; *Heath v. Goslin,* 80 Mo. 310; *Dunlap Printing Co. v. Ryan,* 275 Pa. 556, 119 Atl. 714; 5 Corpus Juris 1363; 25 R. C. L. 64; 7 A. L. R. 216-218, and note.    It is also held that in such cases the liability of the participating, assenting or ratifying members is joint and several, and that it is a question for the jury to determine to whom the credit was given and whether the members authorized or ratified the contract.    5 Corpus Juris 1363.    The facts in *McCabe v. Goodfellow,* 133 N. Y. 89, relied on by defendant's counsel, are essentially different from the facts proved in this case.    There was no proof of assent or ratification by the defendant in that case, which was brought under a special provision of the New York code.

The trial court seemed to think there was no proof of any contract with defendant.    We are unable to concur in that view.    Assuming—as must be done on a motion for a directed verdict—that the evidence most favorable to plaintiff is true, the law implies a contract between plaintiff and defendant that he will pay the reasonable value of the work, labor and ma-

terials furnished by the plaintiff after the orders for the same were approved and ratified by defendant.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

BARNES, P. J., and GRIDLEY, J., concur.