TURNER, Plaintiff in error, v. STATE, Defendant in error.

*No. State 227. Argued May 8, 1974.—Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 502.)

46

For the plaintiff in error there was a brief by *Teper, Fiorenza, Weiss & Teper, S. C.,* attorneys, and *John A. Fiorenza* and *Dominic S. Amato* of counsel, all of Milwaukee, and oral argument by *Mr. Amato.*

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J. No challenge is here made to the conduct of the trial or to the judge's instructions on the crime of first-degree murder. Two issues are raised. One relates to the judge's answer to a question put by an individual juror after a requested rereading of a portion of the instructions. The other relates to a comment made by the prosecutor during closing argument to the jury.

As to both issues raised, it is well to keep in mind that this case went to the jury solely on the charge of first-degree murder. There was no request by defense or the state for the submission to the jury of any lesser-included offenses. No instruction was given or requested as to any crime except that of first-degree murder. All eggs were placed in the single basket of guilt or innocence on the charge of having caused the death of another human being with intent to kill that person. This all-or-nothing-at-all approach clearly was a matter of trial strategy [1] on the part of the defense and prosecution.[2]

In the case before us, following the instructing of the jury on the elements of the crime of first-degree murder, the jury retired but returned to the court to request a rereading of the portion of the instructions dealing with

---

[1] *Neunfeldt v. State* (1965), 29 Wis. 2d 20, 32, 138 N. W. 2d 252, certiorari denied (1966), 384 U. S. 1025, 86 Sup. Ct. 1973, 16 L. Ed. 2d 1029, this court stating: ". . . whether or not the lesser offense is requested would seem to be more a matter of trial strategy and waiver. . . ."

[2] *Id.* at page 32, this court stating: ". . . it would be error for the trial court not to submit the lesser included offense in an instruction if the evidence would sustain it and it is requested either by the state or by the accused."

the matter of intent to kill. After the portion of the instructions dealing with intent had been reread, an individual juror asked the court whether provocation entered into the matter of intent.

At this point, with the question asked, the trial court had three alternatives. One would have been to remain silent, simply refusing to respond to the question asked. At the least, this would have been puzzling to the jury, impelling them to speculate on why the question was left unanswered and inviting them to determine for themselves that answering whether or not the defendant had been provoked in any manner would also answer whether or not he had intent to kill. A second alternative would have been to explain to the jurors that a killing properly falls within the statutory definition of second-degree murder [3] " '. . . where the actor kills in the heat of passion without such provocation as will reduce the offense to manslaughter. . . .' " [4] This would have resulted in giving the instructions as to the elements of the crime of second-degree murder to the jury in a situation where finding the defendant guilty of second-degree murder was not an alternative available to the jury. This would afford the defendant all of the advantages, and none of the risks, involved in the submission of second-degree murder as a lesser-included offense. The trial court properly rejected such alternative. The third alternative was to do what the trial court did. Following the repetition of the standard instructions as to intent to kill, the trial court answered that provocation was not the issue. The

[3] Sec. 940.02, Stats. "**Second-degree murder.** Whoever causes the death of another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, . . ."

[4] *State v. Anderson* (1971). 51 Wis. 2d 557, 562, 187 N. W. 2d 335, quoting *Brook v. State* (1963), 21 Wis. 2d 32, 43, 123 N. W. 2d 535.

jury was to find intent or lack of intent to kill, not the presence or absence of provocation. It is true that second-degree murder is first-degree murder without the intent to kill.[5] But with neither defense nor prosecution seeking the submission of second-degree murder as a lesser-included offense, the trial court was not required to deal with the elements of each and the distinction between them.

With the fatal shooting of the victim by the defendant conceded, it would appear that the defendant had two theories of defense open to him. One involved self-defense, a claim of having acted in response to the victim's throwing open his coat as if to reach for a gun. There is dispute in the eyewitness testimony as whether there was such coat opening immediately prior to the shooting. The other theory would involve provocation. If the jury believed disputed testimony that an argument took place between defendant and victim prior to the killing, the defendant's theory would be that such argument caused such provocation as to cause such heat of passion as to negate the intent required for first-degree murder.

Generally speaking, a defendant is entitled to an instruction on a valid applicable theory of defense but only where such instruction is requested and only where it is supported by the evidence.[6] Here there is neither such request nor such support in the evidence. The reason for the absence of request is obvious. If the defendant had requested and persuaded the trial court that an instruction should be given as to provocation leading to a heat of passion negativing intent, the trial court would have

---

[5] *Id.* at page 562, this court stating: " 'first-degree murder may be submitted without also submitting second-degree murder where intent to kill clearly appears beyond a reasonable doubt. . . .' "

[6] *See: United States v. Dana* (7th Cir. 1972), 457 Fed. 2d 205, 208; *United States v. Vole* (7th Cir. 1970), 435 Fed. 2d 774, 776; *United States v. Grimes* (7th Cir. 1969), 413 Fed. 2d 1376, 1378.

submitted second-degree murder as an alternative verdict along with the instruction requested. In any event, there was no request. When the trial court told counsel in the case how he intended to respond to the individual juror's question, defense counsel stated, ". . . I would object to an expanding on the instructions, . . ." basing such objection on the fact that the standard instructions for first-degree murder contained no reference to provocation. Then, as earlier, there was no defense request for any instructing of the jury as to provocation creating the heat of passion necessary to negate the intent required for first-degree murder.

Even when timely made, a request for instruction on a theory of defense must be supported by credible evidence. It is not ". . . any, or at least some, provocation causing the defendant to commit a homicide 'in the heat of passion,' [that] is sufficient to reduce the homicide to second-degree murder . . . ." [7] The record before us does not suggest, much less establish, the degree of provocation and heat of passion required for dropping a charge of first-degree murder to a conviction for second-degree murder.[8] The only conversation between defendant and victim testified to involves the victim's statement to defendant, "If you can't take a joke, you shouldn't give one." The tavern owner testified to an argument between

---

[7] *State v. Anderson, supra,* at page 562.

[8] *Id.* at pages 562, 563, quoting *Zenou v. State* (1958), 4 Wis. 2d 655, 91 N. W. 2d 208, at pages 667, 668, stating: " '. . . First-degree murder is now defined as causing "the death of another human being with intent to kill that person or another." Sec. 940.01, Stats. Second-degree murder is defined as causing "the death of another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life." Sec. 940.02. If the actions and mental state of a defendant are found to be such as to make him guilty of first-degree murder with the sole exception that he does not have "the mental purpose to take the life of another human being," he is guilty of second-degree murder. . . .' "

victim and killer preceding this statement but that, even with a victim's prior reputation for getting into arguments, would be insufficient to establish the degree of heat of passion involved in second-degree murder.[9] The testimony as to the victim having a pool cue in his hand, or of throwing open his coat, would relate to a claim or theory of self-defense, not to the theory of having acted in a heat of passion without sufficient provocation to constitute manslaughter. Had a second-degree verdict or instruction here been requested, it could have been denied for lack of ". . . some reasonable ground in the evidence for a conviction of the lesser offense and an acquittal of the greater offense. . . ."[10] The defendant here had no right to have the court instruct on a defense theory based on provocation and heat of passion for the reason that such theory has no evidentiary support in this record.[11] We find no error in the judge's answer to the individual juror making intent or lack of intent, not provocation or lack of provocation, the determination the jury was to make on the matter of intent.

The second issue raised by defendant relates to a statement made by the prosecutor during his closing argument. In summarizing and completing his argument to the jury, the assistant district attorney said: "I think from the testimony that when a man is inside a tavern, and he's got a gun, and he points it at someone, and he shoots him in the heart, that's First Degree Murder." We find nothing improper in the statement made. This court has rejected the strict rule against a prosecutor expressing an opinion based on the evidence.[12] In Wisconsin a

[9] *Id.* at pages 562, 563.

[10] *State v. Melvin* (1970), 49 Wis. 2d 246, 252, 181 N. W. 2d 490.

[11] *See: United States v. Cullen* (7th Cir. 1971), 454 Fed. 2d 386, 390.

[12] *State v. Cydzik* (1973), 60 Wis. 2d 683, 694, 211 N. W. 2d 421.

prosecutor or defense attorney may ". . . comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces him and should convince the jurors. . . ." [13] However, when such an opinion is expressed it must be clear that it is ". . . based solely upon the evidence in the case. . . ." [14] ". . . So long as counsel did not depart from the evidence produced, but confined his argument to reasoning from that up to the conclusion that it established guilt, however eloquently and persuasively he may have handled his subject, it was not only legitimate but commendable. . . ." [15] Here the prosecutor told what he thought or concluded "from the testimony" and there is nothing wrong with him doing just that.

*By the Court.*—Order affirmed.

---

[13] *Embry v. State* (1970), 46 Wis. 2d 151, 160, 174 N. W. 2d 521.

[14] *Id.* at page 160.

[15] *Fertig v. State* (1898), 100 Wis. 301, 308, 75 N. W. 960, quoted with approval in *State v. Cydzik, supra,* at page 695.